UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/17/2023___
```

SPEEDFIT LLC and AUREL A. ASTILEAN,

                                    Plaintiffs,

            -against-                                       22-CV-3140 (NSR)
                                                            OPINION & ORDER

LIFECORE FITNESS, INC., and
ASSAULT FITNESS,

                                    Defendants.

NELSON S. ROMÁN, United States District Judge:

Plaintiffs SpeedFit LLC and Aurel A. Astilean (collectively, "Plaintiffs") commenced the instant action against Defendants LifeCore Fitness and Assault Fitness (collectively, "Defendants"), alleging (1) unjust enrichment; and (2) violation of New York General Business (GBL) Law § 349.

Presently before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 30.) For the foregoing reasons, Defendants' motion is GRANTED.

## BACKGROUND

This action springs from an intellectual property dispute over treadmills. The allegations in the Amended Complaint ("AC") are deemed true for the purpose of resolving this motion.

Plaintiff SpeedFit LLC ("SpeedFit") is a Delaware limited liability company that is licensed to conduct business in New York and has an agent for service located in Westchester County, New York. (AC ¶ 1.) Plaintiff Aurel A. Astilean ("Astilean") is the majority owner of SpeedFit and its Chief Executive Officer. (AC ¶ 2.) SpeedFit engineered, designed, and built a

treadmill known as "Speedboard 2" at significant expenses. Speedboard 2 is an innovative treadmill due to two unique features: first, it is leg-powered and requires no energy source; second, it has a curved running space that adjusts automatically according to its user's weight and desired speed. (AC ¶¶ 5-6.)

Before Speedboard 2, Astilean had developed a wooden prototype, Speedboard 1, which was a leg-powered treadmill with a flat surface, in 2005. Astilean commissioned a metal prototype of Speedboard 1. By December 2006, Speedboard 1 began to gain market interest and was featured in Style Magazine, which endorsed the non-motorized, flat treadmill concept. (AC ¶¶ 31-32.) However, Speedboard 1 required a battery-operated motor and had to be adjusted each user of differing weights. (AC ¶ 33.) Astilean spent a few more years improving Speedboard 1's design. By late 2008, he built a wooden prototype of Speedboard 2, which allowed users of varying weights to step on it and start running without any adjustment. (AC ¶¶ 36-37.) At the time, no other treadmill on the market had this feature. (AC ¶ 37.)

On November 7, 2008, SpeedFit filed patent application number P-4096-38A for Speedboard 2, which was approved. (AC ¶ 42.) A patent was issued to Astilean on or about November 13, 2012. (*Id*.) In or about March 2009, the employees of Woodway, Inc. ("Woodway"), the company which built SpeedFit's metal production model of Speedboard 2, filed patent application number 13235065 for Speedboard 2 ("Woodway Patent"). (AC ¶ 43.) SpeedFit sued Woodway. As part of the settlement between SpeedFit and Woodway, the Woodway Patent was assigned to SpeedFit for all purposes. (AC ¶ 44.) Speedboard 2 is now a staple for training by professional sports teams in all sports and Division I College Sports Programs. Speedboard 2 is also used by the U.S. military, including in remote overseas and desert locations without access to readily available electricity. (AC ¶ 20.)

Defendant LifeCore Fitness ("LifeCore") is a California corporation. Defendant Assault Fitness ("Assault") is a California corporation and a wholly owned subsidiary of LifeCore. (AC ¶¶ 1-4.) Defendants are in the business of selling exercise fitness equipment, including a bestselling "AssaultRunner Pro" treadmill and other non-motorized treadmills (collectively, "Assault Treadmill"). (AC ¶ 21.) Defendants maintain websites at (1) lifecorefitness.com; (2) assaultfitness.com; and (3) diamondbackfitness.com, through which Defendants advertise and sell their products, including the Assault Treadmill. (AC ¶ 22.) Defendants market and sell the Assault Treadmill nationwide, including in Westchester County, New York State. (AC ¶ 25.) Defendants have contracted to sell treadmills to various New York athletic teams, including the New York Yankees, Mets, and Jets, as well as to the U.S. Military Academy in West Point, New York. (AC ¶ 26.)

Plaintiffs allege that the Assault Treadmill wrongfully copies Speedboard 2 in violation of Plaintiffs' patents. Plaintiff asserts that, at the time of Speedboard 2's invention, there was nothing on the market even remotely resembling Speedboard 2. Prior to Plaintiffs' sale of Speedboard 2, Defendants did not manufacture, market, or sell a leg-powered treadmill, let alone one with a curved running surface. (AC ¶ 27.) Plaintiffs further allege that the Assault Treadmill is inferior to Speedboard 2, because—contrary to Defendants' advertisement— the Assault Treadmill does not reduce injury to users. Specifically, the Assault Treadmill has no catenary curve, which is Speedboard 2's critical injury-preventive feature. Thus, the incidence of injury on the Assault Treadmill is far greater than on Speedboard 2. (AC ¶ 66.) As such, Plaintiffs aver that Defendants' misrepresentation of the Assault Treadmill's safety poses a danger to the consuming public. (AC ¶ 24.)

Defendants' websites state that "LifeCore respects the intellectual property of others" and

invites communications in connection therewith. (AC ¶ 23.) By letter dated October 16, 2018, Plaintiffs notified Defendants that the Assault Treadmill infringed upon at least two of SpeedFit's patents. (AC ¶ 46.) By letter dated September 14, 2018, Defendants requested a claims chart to analyze Plaintiff's allegations of wrongdoing. (*Id.*) On October 16, 2018, SpeedFit provided the requested claims chart and demanded that Defendants "cease and desist from any further manufacture or sale of the [Assault Treadmill]." (*Id.*) Plaintiffs' counsel communicated via email with Defendants' CEO, Matthew Simmons, between June 6 and 17, 2019. Simmons initially indicated a willingness to meet to discuss Plaintiffs' allegation, but later canceled the meeting. (AC ¶ 47.) The parties never met. (*Id.*) Neither have Defendants ceased or desisted from selling the Assault Treadmill, which comprises a substantial part of Defendants' revenue from the past ten years. (AC ¶¶ 48-49.) Plaintiffs accordingly aver that SpeedFit is entitled to Defendants' gross profits from the sale of each Assault Treadmill for the six years preceding the commencement of this action and all future sales of the Assault Treadmill, in an amount presently believed to be more than $20,000,000. (AC ¶¶ 50, 58.) Plaintiffs further seek monetary judgment against Defendants for violation of GBL § 349 and permanent injunction enjoining Defendants from manufacturing and selling the Assault Treadmill. (AC ¶¶ 60-74.)

## LEGAL STANDARD

### I.   Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## II.    Preemption

Under the Supremacy Clause, state law that conflicts with federal law is preempted and without effect. *See* U.S. Const. art. VI, cl. 2; *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005). There are three types of preemption: "where Congress has expressly preempted state law [("explicit preemption")], where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law [("field preemption")], or where federal law conflicts with state law [("conflict preemption")]." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313–14 (2d Cir. 2005) (internal citations omitted). Conflict preemption can arise where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (internal quotations and citations omitted).

## DISCUSSION

## I.    Preemption

Defendants argue that Plaintiffs' unjust enrichment and GBL § 349 claims are preempted by federal patent law. Plaintiffs assert that its unjust enrichment claim is not "conflict-preempted" because New York state law on unjust enrichment does not "stand as an obstacle to" federal patent

law. (Pl. Opp. at 12-13, ECF No. 33.) The question for the Court is whether Plaintiffs' claims are preempted as pled.

This case concerns only conflict preemption.[1] In determining "whether these state law torts are in conflict with federal patent law and accordingly preempted," the Federal Circuit[2] assesses a defendant's allegedly tortious conduct. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted." *Id*. at 1335.

Here, Plaintiffs' unjust enrichment claim[3] is predicated solely upon Defendants' alleged replication of Speedboard 2 in violation of Plaintiffs' patents, a tortious conduct—also known as "patent infringement"—that is squarely within federal patent law's purview. *See* 35 U.S.C.A. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.")  In addition, 35 U.S.C. Section 284, titled "Damages," aptly addresses the remedies Plaintiffs sought for their unjust enrichment. *See* 35 U.S.C.A. § 284 (West) ("Upon finding for the claimant the court shall award the claimant damages adequate to

---

[1] Federal patent law does not provide explicit preemption, and "Congress does not intend to occupy exclusively the field of unjust enrichment law." *Ultra-Precision Mfg., Ltd.*, 411 F.3d at 1377 (citing 35 U.S.C. §§ 1–376 (2000) and *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co*., 196 F.3d 1366, 1371 (Fed. Cir. 1999)).
[2] Federal Circuit law governs whether federal patent law preempts a state law claim. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005) (internal citation omitted).
[3] To prevail on a claim of unjust enrichment, plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense, and (3) that "it is against equity and good conscience to permit . . .defendant to retain what is sought to be recovered." *Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 798 (1999) (internal citations omitted).

compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . .").

Further, Plaintiffs pled no additional elements that may absolve this claim of its impermissibility "to offer patent-like protection to subject matter addressed by federal law." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 507 (S.D.N.Y. 2018) ("The patent laws will not preempt [state law] claims . . . if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law.") Accordingly, Plaintiffs' unjust enrichment claim is clearly preempted and dismissed without prejudice.

Plaintiffs' GBL § 349 claim comprises of two parts: first, a copying claim based upon the same alleged conducts as the unjust enrichment claim ("GBL § 349 copying claim"); and second, a deceptive act claim based upon Defendants' alleged misrepresentation of the Assault Treadmill's safety level ("GBL § 349 deceptive acts claim"). The GBL § 349 copying claim is preempted and accordingly dismissed without prejudice for the same reasons discussed above.

As to Plaintiff's GBL § 349 deceptive acts claim, drawing all inferences in favor of Plaintiffs, the Court interprets Plaintiff's second cause of action to include deceptive acts by Defendants, which are not found in the federal patent law. According, Plaintiffs' GBL § 349 deceptive acts claim is not preempted. *See Bytemark, Inc.* at 407.

## II.   Statutes of Limitations

Defendants next argue that Plaintiffs' GBL § 349 claim is time-barred.

GBL § 349 claims are subject to a three-year statute of limitations. *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (internal citations omitted); *see also Schandler v. N.Y. Life Ins. Co.*, No. 09–CV–10463, 2011 WL 1642574, at *4 (S.D.N.Y. Apr. 26,

2011) ("Private rights of action under section 349 are governed by a three-year statute of limitations . . ."). The accrual of a GBL § 349 claim begins to run at the time of the plaintiff's injury, or "when all of the factual circumstances necessary to establish a right of action have occurred, so that plaintiff would be entitled to relief." *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016) (citing *Gristede's Foods, Inc., v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y.2007)).

Plaintiffs do not contest that three years have passed since Defendants' alleged misrepresentation of the Assault Treadmill's safety. Instead, Plaintiffs assert Defendants' conducts fall under the continuing wrong doctrine, which tolls the limitations period. The continuous wrong doctrine is "an exception to the general rule that the statute of limitations 'runs from the time of the breach though no damage occurs until later.'" *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (2017) (citing *Ely–Cruikshank Co. v. Bank of Montreal,* 81 N.Y.2d 399, 402 (1993)). However, this doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct. The distinction is between a single wrong that has continuing effects and a series of *independent*, *distinct* wrongs." *Id.* at 601 (internal citations omitted) (emphasis added). The continuing wrong doctrine is inapplicable "where there is one tortious act complained of since the cause of action accrues in those cases at the time that the wrongful act first injured plaintiff and it does not change as a result of continuing consequential damages." *Id.*

As pled in AC, Defendants' wrong for Plaintiffs' GBL § 349 deceptive acts claim is to have "advertised [the Assault Treadmill] as safe to use but was not." (AC ¶ 65.) Perplexingly, Plaintiffs identify no advertisement by Defendants.[4] Even the most favorable inference for

---

[4] The Court need not reach the Plaintiffs' pleading sufficiency for this motion, but Plaintiffs' allegation here clearly contains insufficient "factual matter." *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs cannot justify a conclusion that Defendants committed "a series of independent, distinct wrongs" that render applicable the continuing wrong doctrine. *Henry*, 147 A.D.3d at 601.

Accordingly, Plaintiffs' remaining GBL § 349 deceptive acts claim is time-barred and dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss the AC. Plaintiff is granted leave to file a Second Amended Complaint (SAC). If Plaintiff chooses to do so, he will have until February 16, 2023, to file the SAC.  Defendant is then directed to answer or otherwise respond by March 20, 2023. If Plaintiff fails to file a SAC, any claims dismissed without prejudice by this opinion and order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 30.

Dated:  January 17, 2023
White Plains, New York

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE